We'll hear the next case on the calendar, Dolan v. Fairbanks Capital. Good morning. My name is Michael Dolan. I'm the appellate plaintiff. Thank you for allowing me a few minutes to speak directly to all of you. I'm here today as a homeowner. Just to go through a couple of things as briefly as I can. My wife and I filed this case in 2003, and after years of battling Fairbanks, we were unlawfully foreclosed on. Our money and property were stolen. Our home was sold out from under us to a third party in a deal that was prearranged by Fairbanks and Fairbanks attorneys. This left us in financial ruins. Our family of six were days from eviction, about to become homeless, and foreclosure was just a flat-out horrible experience. The most important message I wanted to bring today was that after years of litigation in the State Supreme Court, we finally prevailed. Justice Paul Baisley issued a decision and judgment order on July 6, 2012, and we proved this was an unlawful foreclosure by Fairbanks. We proved the predatory loan servicing by Fairbanks. We proved Fairbanks was liable. We established two counterclaims against Fairbanks, and Judge Baisley had issued this decision and judgment in our favor. It was made on the merits as well. The federal action centers on predatory loan servicing by this mortgage servicer. Is that why in this federal action, which I think you're about to describe, your lawyer agreed with the court's assessment that you had at that point? You're not making a claim of actual damages? I'm not sure I understand your question. So at some point during the back-and-forth, you, your lawyer, said, I'm just, we're just, my client is just making a claim of procedural violation. There are no actual damages because we were fully compensated? Not at all. No, okay. No, we certainly were making a claim for damages. Just to finish what I wanted to say real quickly, the federal action was on predatory loan servicing. Fairbanks was the largest subprime mortgager in the United States in 2003, and the state judgment proved how Fairbanks used predatory loan servicing practice to abuse our family. You say, as I understand it, that Fairbanks was the real party behind the foreclosure action? That's right. What's the evidence to support that allegation? I was just going to point to that, Your Honor. Thank you. In the federal case, Docket 352, which is the July 6, 2012, Baisley State Judgment, which we immediately submitted into the federal action because we won, and it looked like we proved our federal case as well, but the district court did not adopt the state judgment, and that's really where the thing went sideways at that point. In order to have a violation of a New York general business law, you have to have harm not just to yourself but a more generic one. Originally in 2003, there were some things that suggested Fairbanks' behavior was predatory more generally. The district court here, relying on a finding in the state court in 2012, said there was none. What is there in the record that allows us to say that Fairbanks is predatory more than to you more broadly? The federal government had done an investigation that ended in November 2003. My wife and I were customers during that time. It was obviously private as they were investigating it before it became public. Fairbanks, which, as I said, was the largest servicer in the United States, had over 500,000 families, mortgages that they're serviced for, with most of them in foreclosure at that point. And the settlement explains the predatory practices that Fairbanks was applying. On what basis did the state court then find that there was only damage to you? Well, through ñ I mean, the district court treated that as binding. So my question is, what do I do with that? Two things. One is that the state court determined and broke down the predatory practices in detail. We had an evidentiary hearing in 2005, which was adopted by the state judgment in 2012. And that's in the record in the brief. To the other point of the general business law, that was for deceptive practices, basically, to the general public. When a mortgage servicer applies predatory services to a homeowner, and in our case we prove they stole our money, they didn't apply the payments, they abused us. And it's detailed, as I said, in my writings. Isn't part of your argument that there's evidence in the record that Fairbanks entered into a settlement with the federal government? Yes. And that involves some $40 million in a settlement on related issues? Yes. Isn't that the argument to be made? That was part of it, and we wanted to use that as evidence to support what we had already proved. I guess it's Title 28, Section 1738 mandates that the federal court has to adopt the lower court's judgment when it's done on the merits and so on. I can't recite the exact words. But the federal court didn't adopt the state judgment, and they didn't apply our counterclaims, the counterclaims for breach of duty of good faith and fair dealing and for misrepresentation. What was described in the U.S. government case versus Fairbanks mirrored our case. I mean, we were the customers of that company getting abused by them. They settled. We had already filed our action. I didn't settle. I didn't want to settle. And we litigated the case. And then we proved it. And then we came back. You know, we're still in the federal case. It took years. All of us took years. But we proved it. And yet we couldn't show the jury. We couldn't talk to the jury about it. If we did, we were warned it would be a mistrial. So the evidence couldn't come in. None of the state evidence could come in. And the evidence that was allowed to be used, we couldn't respond back to it without saying or risking a mistrial. And that was really why the trial was so difficult. It was basically impossible. We had claims dismissed, diminished. And, again, those are in my brief. And I'm certainly, if I have time, I'll rebut whatever claims he wants to bring up. You'll have time in rebuttal. Okay.  Thank you. Mr. Kramer. May it please the Court, Stephen R. Kramer for appellee. Your Honors, I tried the case. I was involved in a year of the pretrial proceedings. A couple statements I think you've all made, evidence. The judge expressly said to the plaintiffs, you can, if you can independently bring in evidence from the state court trial, you can do that. And the judge repeatedly said that to the plaintiffs. At one point in the transcript, stops, this is a pretrial hearing, says to the plaintiff counsel, how are you going to prove this? Let me, let's talk about this. And the judge says you can use the transcripts. They never did, Your Honors. They never brought, at one point during the trial, the judge, Judge Chen, said, you can use the statements below. As in 801D, if you want. Let me ask you this, though. I understand that. With respect to the business law, section 3049 ground, and as Judge Calabresi pointed out, there has to be something that shows beyond Mr. Dolan's particular circumstance, it's something that shows some general or some broader consumer harm. There is evidence in the record, isn't there, that the Federal Government and Fairbanks entered into a settlement for $40 million, having to do with related predatory practices claims? There was a motion in limine on that, which was granted by the district court. The district court held that the claims that they were proceeding were not linked to that. It's in my brief that the judge says that might go to the second phase of the case as to damages. Okay? The claim here is a single-shot dispute for the GBL. And it's because what they were saying was, you didn't credit my payments correctly. And here's why it's a single-shot dispute. It's because there was a forbearance agreement that the plaintiff entered into. That document was the one. Is your argument that what Fairbanks was alleged by the government and entered into a consent decree, which did not admit, of course, but which was there, that all that had to do with things which were sufficiently unrelated to the individual claim of appellant so that it did not show what was necessary for general business law 9? Is that your argument?  It is my argument. And, in fact, in the — And the district court so held, but on what basis? Well, Judge, two things. First, in the state court proceeding, they lost on their GBL claim. Okay? Now, they lost on that, but the — Well, they could have lost on that for any number of reasons. Agreed. And the dispute here was how we administered this forbearance agreement. The judge, in looking at the motion in Lemonet, said it's not relevant to that. There was never any evidence put up linking the two of this, hey, there's a consent decree out there, that decree tends to make the claims that I have against you more prohibitive or not. They had the ability, if they wanted to, to do that. What was the response back when Judge Chen made that determination? That is, what was — was there an objection to that or — There was a motion in Lemonet made. It was briefed. It was never brought up again. One thing I do want to correct here, that counsel said we were not allowed to use the state evidence. It's not counsel, Mr. Dolan. They were allowed to. The judge actually said to me, Mr. Kramer, I'm telling you, that evidence below could come in. I'm not categorically saying it can't come in. They were free to try to get that in. They were represented by counsel at trial to use any of the evidence that came in there, below in the state court proceeding, whether it had been an admission, whether it would have been testimony. That was never proffered. In fact, at one point, plaintiff's counsel said the forbearance agreement is not admissible. And the judge said, why would you say that? It's relevant to this whole case. It's your whole claim is Fairbanks did not properly allocate your payments according to that forbearance agreement. That's why it's a single-shot dispute, Your Honor. It's that forbearance agreement of how you made those payments and how those payments were allocated pursuant to it. On direct, plaintiffs said, well, I don't understand why I had to pay under certified loan, under certified payment. My payment should have gone to principal. It should have gone to interest. And I think that's, if you're going to go look at the FTC decree, maybe if that were the case, maybe you can link it. That's not what happened here. The trial judge actually said at one point, am I the only person who didn't realize the payments were governed by this forbearance agreement? And that's what happened. That's why. Can I ask you something else, if I could? Of course, Your Honor. On the RESPA claims, the district court relied understandably on the standing issue on Spokio. But since Spokio, we've had the case of Struble v. Comenity Bank. And that case interprets Spokio and holds, at least as I understand it, that their violations of certain provisions of the Truth in Lending Act could confer standing. Your Honor, I've read the last, I think, six months of this Court's decisions on applying Spokio and Struble. This Court has not issued a per se rule, and we did not, and Judge Chen did not say a per se rule, that a bear violation gets you over the hurdle. But wouldn't it make some sense to send it back to the district court to look at this in light of the standing issue, in light of Struble? Well, I think the judge, my answer is no, and the reason why is the judge performed, and I put in my brief, the analysis that Struble asked for, a two-step analysis. The Court did not say because Plans Council admitted it was a bear procedural violation that it's dismissed. The Court went on to look at the statute and compare it to what was at issue in Spokio and did an analysis of the RESPA claim that was being made here. So, Judge, the Court did not stop, and I actually argued in my brief, the Court conducted a Struble analysis and went through and did a two-step analysis, and did a third saying the articulated claim here under RESPA. There was no harm. There was no nexus. It was a hello and goodbye. The record's clear what was testified to. There was no harm, whether you want to say it's an intangible right or tangible. There is no risk of harm in this case, and I go back to we tried this case. I mean, what's concerning in a way is if you think about this case in context, and the State court found that TMS and Fairbanks had engaged in predatory practices. Well, Fairbanks was not a party judge. I understand. Yeah. And I can ‑‑ if that transcript, it's not here. So you talk about the State court proceeding does not refer to, and Judge Chen is about, I think, four decisions says we were not a party to that. They argued when I argued for essentially race judicata saying you've been made whole. You've been made whole. You took your case. You teed it up. You won. Good for you. What damage do you have against me in this Federal case? They argued successfully you were not a party to it, and these are different claims, so they said there's a different case, different claims. That was their position, Judge. So you may be troubled by saying that, but they said this is a different claim, and the judge looked at it and said, hey, it's my client's fiduciary duties was that issue of how did we administer the contract that we entered into? That gets me back to my single shot. So I could see on one sense you could read the decision, and I could explain, I understand how that happens. Is it your position that under RESPA, a plaintiff, in order to have a cause of action, must have actual damages? Or is that a standing issue or a cause of action issue? It was a standing issue, and it wasn't just RESPA. I think that's a little too broad for my position. I'm asking about RESPA. On RESPA, it's these claims. It's the claims here. It was a 2605E claim. That's different. The judge, Judge Tend, said if it was a 2607 claim, they get to go, but not under a 2605E claim. So under RESPA, my claim is it's the claim that they made here, and I think that's a big difference. I do. I think that's a big difference, and that's what Judge Chen, in her Spokio analysis, wrestled with and gave a very long analysis of here's the RESPA statute, here's the claims that they're making in this case. And I go back to we always try just a case. But they had limited claims here, and they took the affirmative position of you are not a party in the state court. We have different claims against you, and we want to take you to trial. Okay. And we did. And the judge said, and it's in the record, I've given you every break possible to plaintiff. That's in the record. It's on my brief. I could read you other statements of they said you're a different party. You weren't in the state case. We got different claims than the state case. We want to take you to trial. And we did. And they got every break from the judge they can ask for. Thank you. Your Honor, there's a couple of things real quick that I need to go over, and I'll start because of the way these things fell. First off, I was already litigating this case for ten years when the rest judicata issue came up and the case got transferred from Central Islip to Brooklyn. And after ten years of this position change from party to not being a party and so on, which is in the brief, Mr. Kramer reversed and said that they were a party. That caused the court to say, we want to get a pro bono attorney to help you. They appoint an attorney. He's on the case for less than 90 days, and he misreads the case. He follows what was just he made an inadvertent mistake, and he went the wrong way. He explains later that it was he should have argued issue preclusion. And for years he tried to get that reversed, and we couldn't. That's also all explained. But the other things I want to touch on, too, and so that's a valid point, but it was a mistake. It was inadvertent, and we tried repeatedly to go back to what it said. Me personally, I have always said they were a party. But I digress, because that's in the brief. Once Spokio, which I didn't want to be here and try to ---- You did successfully or not, you personally ---- I'm sorry? You did successfully oppose one of Fairbanks' summary judgment motions taking the other position. The made whole, I'll come to that, because that's important. The made whole was the argument that if we are a party, you know, you won in case and you were made whole. We weren't made whole. What happened was we were ---- we got counterclaims, counterclaims in New York State. You're allowed to sever them. It's a permissive State. And if we were made whole by those counterclaims, that would have made the State conclusionary, compulsory counterclaims. So the whole thing is a mess. And the point is that, again, the counterclaims were not applied, and they should have been applied in the Federal case. Of course, that's what New York allowed you to do. But on the whole letter, I just want to touch on that real quick. I think I overshared this. Nope. Oh, boy, I'm out of time. Here. The whole letter is the first communication received by a new servicer. It notifies the homeowner from the new servicer. It notifies the homeowner the proper boarding of the mortgage has been done and information related transfer to the new servicer. It's a handoff. And I believe Congress intended this notice to make sure that that was done properly. And I say this without, you know, humbly. But the notice that Fairbanks wants to argue is that it's just really like a neighborhood welcome wagon letter. And it's not. It's very important. And the failure of boarding, when this is not done properly, the failure of properly boarding and transferring all related information opened the door into this immediate abuse, which we experienced immediately, which is, again, all detailed in the Wellen and Baisley decision. So I just wanted to mention that real quick. The last part is on 349, if I can, because, again, the public, is that this. When a mortgage is, when a homeowner is abused by predatory loan servicing, so is the investors. And that's the public. It's both get abused. So from that standpoint, the last thing is on the forbearance agreements. They were considered oppressive and overbearing, overreaching. Thank you, Your Honor. Thank you. Thank you both for your arguments. Wish everyone a good Thanksgiving. Our final case is on submission. The clerk will adjourn court.